[Sac. No. 2892.  In Bank.—November 12, 1921.]

STATE OF CALIFORNIA, etc., Appellant, v. THE
ROYAL CONSOLIDATED MINING COMPANY (a
Corporation), et al., Respondents.

[1] Taxation — Invalid Sale to State — Continuance of Lien —
Judgment.—In an action by the state controller to recover the
possession of real property which had been conveyed to the state
for delinquent taxes, a judgment decreeing that the state had no
interest in or lien upon the property because of the invalidity of
the original tax sale to the state is erroneous, since the lien of
the state remains as a burden on the property until discharge by
payment or by a valid sale to the state.

[2] Id.—Action by State—Possession of Property—Affirmative
Relief—Right of Defendant.—In an action by the state con-
troller acting under the provisions of section 3773 of the Political
Code to recover the possession and the rents and profits of real
property which had been deeded to the state for delinquent taxes,
the defendant cannot, in the absence of statutory authority, con-
vert the action into one to quiet title and obtain affirmative re-
lief therein against the state.

[3] Id.—Consent of State — Provisions Authorizing Cross-com-
plaints Insufficient.—The provisions of the law authorizing
cross-complaints do not give the consent of the state to a cross-
complaint to quiet title in an action brought by the state con-
troller, representing the state, for the possession and for an
accounting of the rents and profits of real property deeded to
the state for delinquent taxes.

[4] Courts—Actions Concerning Possession of Real Estate—
Jurisdiction—Constitutional Law.—Where the constitution it-
self has expressly defined and fixed the exclusive jurisdiction of
its courts with reference to actions concerning the possession of
real estate, the legislature cannot, under the general power to
legislate, infringe upon the jurisdictional limits established by the
constitution itself, by giving jurisdiction to superior courts of
counties other than those in which the property is located.

[5] Taxation—Recovery of Possession of Real Property—Juris-
diction—Section 3773, Political Code, Unconstitutional.—Sec-
tion 3773 of the Political Code, in so far as it attempts to give
jurisdiction to the superior court of Sacramento County of actions
by the state controller for the possession of real property located
in other counties which has been conveyed to the state for delin-
quent taxes, is void, in view of section 5 of article VI of the con-
stitution, which gives exclusive jurisdiction of actions to quiet

title or for the possession of real property to the superior court of the county in which the property is situated.

[6] Id.—Recovery of Rents—Local Character of Action not Destroyed.—The local character of an action on behalf of the state to recover the possession of real property which has been conveyed to it for delinquent taxes, is not affected by the fact that the action is also one for the rents, issues, and profits of the property, since the action in so far as it relates to the rents is essentially one to quiet title within the meaning of the constitution.

[7] Pleading—Action for Rents—Issue of Title—Character of Action.—An action for rents and profits of real property where the right to the title is involved is not a transitory action.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Charles P. Snyder, District Attorney, W. A. Gett and Downey & Downey for Appellant.

Alfred J. Harwood for Respondents.

WILBUR, J.—This action is brought by the controller of the state of California, acting under and by virtue of authority conferred upon him by section 3773 of the Political Code, to secure the possession of, and the rents, issues, and profits derived from, certain mining properties described in the complaint. Plaintiff alleges that the state of California ever since July 12, 1910, has been the owner of the real property described in the complaint, "being the same land conveyed by Louis Cadematori, Tax Collector of Calaveras County, State of California, to the State of California, on the 12th day of July, 1910," The defendants deny that the state of California was the owner of said properties on the twelfth day of July, 1910, or of any part thereof, and deny that the state of California is the owner of said real property or any part thereof. They deny that the land or any part thereof was conveyed by Louis Cadematori, tax collector, to the state of California on July 12, 1910, or at any other time. Defendants further aver that the Royal Calaveras Mining Company is the owner in fee simple absolute of the property in question. Defendants pray judg-

ment that plaintiff take nothing by the action, and that defendants have judgment for their costs of suit. The court found that the state of California was not the owner of the property and stated its conclusions of law, as follows:

"I.    That the plaintiff is not the owner of the real property described in the complaint, or any part or portion thereof, and that plaintiff has no right, title or interest in said real property.

"II.    That the defendant Royal Calaveras Mining Company, a corporation, is the owner and seized in fee thereof, and is in possession and is entitled to the possession of the same and the whole thereof.

"III.    That defendants are entitled to judgment and to their costs of suit."

In the judgment it is ordered, adjudged and decreed "that the plaintiff is not the owner of the real property described in the complaint or any part or portion thereof *and that plaintiff has no right, title or interest in said real property.* . . . That defendant Royal Calaveras Mining Company is the owner and seized in fee of said real property described in the complaint and is in possession and is entitled to the possession of the same and the whole thereof." Then follows the judgment for costs.

The adjudication is, in effect, a judgment quieting the title of the defendant to the property in question against all claims of the state of California of every nature and description.

[1]    The judgment here is particularly objectionable by reason of the fact that under our system of taxation the liens for taxes imposed for the five years immediately succeeding the sale and prior to the execution of the deed do not result in a sale and remain liens on the property until payment or a valid sale from the state of California. For the years subsequent to the deed to the state the property is not assessed at all on the theory that the property then belongs to the state, but if the deed to the state is void, the inchoate lien of the state for the taxes of succeeding years remains as a burden upon the property until discharged, and therefore a judgment against the state decreeing that the state has no interest in or lien upon the property in question because of defects in or the invalidity of the *original tax sale* to the state in 1905 is erroneous.

It is well settled that such relief will be denied to a property owner notwithstanding errors in the sale or in the assessment, if it can be ascertained from the assessment that the property owner is liable in justice and good morals to pay a tax thereon which has not been paid. (*Savings & Loan Society* v. *Burke,* 151 Cal. 616, [91 Pac. 504].) Under our system of taxation the lien therefor attaches on the first Monday in March of each year. "Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof." (Pol. Code, sec. 3716.) Taxes upon personal property and upon the improvements upon real property are also liens upon the real property. (Pol. Code, secs. 3717 and 3719.) The lien attaches and remains upon the real estate until payment or sale, notwithstanding defects in the assessment, and if the sale is for any reason void, it, of course, does not discharge the lien. If the judgment in this case had been confined to the right of possession of the plaintiff, which depends upon the validity of the tax sale relied upon, the court could have entered such a judgment without requiring the defendant to pay the taxes upon the property. But where, as here, the judgment goes further, and awards affirmative relief to the defendants, it is clearly erroneous and must be reversed.

[2] The court by its judgment in effect treated the answer as a cross-complaint to quiet title and quieted the title of the defendant against all claims of the state of California. Although such relief was not expressly prayed for by the defendant. The state controller, under the provisions of section 3773 of the Political Code, represents the state for the purposes of requiring an accounting for rents and profits and securing possession of the real property, but he had no authority to represent the state as a defendant in a suit to quiet title, nor had the state authorized itself to be sued in an action to quiet title to determine the validity of liens for taxes or tax deeds issued to it. The defendant, of course, could resist the claims of the state controller made for possession and for an accounting of rents and profits on behalf of the state by any appropriate defense, including the defense of the invalidity of the tax deed (36 Cyc. 910, sec. 7a),

but it could not convert the action brought by the state controller into one against the state for affirmative relief by an application for affirmative relief. The claim against the state could not be maintained in the absence of statutory authority (*People* v. *Talmage,* 6 Cal. 256; *People* v. *Miles,* 56 Cal. 401; *People* v. *Lee Chuck,* 74 Cal. 32, [15 Pac. 322]), either by complaint or by cross-complaint.

The rule is thus stated in 36 Cyc. 910: "As a part of his defense defendant may maintain against the state a cross-bill or cross-complaint, provided it relates only to the subject matter of plaintiff's suit and does not pray for original and independent relief; but he cannot maintain such cross-action for independent affirmative relief; nor can he, without clear statutory authority therefor, claim the benefit of a setoff or counterclaim against the state constituting an independent cause of action, for this would contravene the rule that a state cannot be sued without its consent, although there is some authority to the contrary" (citing *People* v. *Miles, supra*).

[3] The general provisions of the law authorizing cross-complaints do not give the consent of the state to such cross-complaint in an action brought by the state (*People* v. *Miles, supra*).

For the reasons above given it will be necessary to reverse the judgment in this case. If the case were to go back for a new trial, it would be proper for us to consider the various points raised as to the validity of the tax deed upon which the plaintiff relies; but we were in doubt as to whether or not the superior court of the county of Sacramento had jurisdiction of this action, notwithstanding the express provisions of section 3773 of the Political Code purporting to grant such jurisdiction. The question is as to the jurisdiction of the superior court under the constitution itself (art. VI, sec. 5). By this section of the constitution the superior court of the county in which the land is located is given exclusive jurisdiction of actions to quiet title to or for the possession of such real estate. As this action is clearly one for the possession of real estate, and as the question had not been presented by counsel, we called for argument as to the constitutionality of section 3773 of the Political Code, which expressly confers jurisdiction upon the superior court of Sacramento County, regardless of the location of the land.

The attorney-general claims that the superior court of Sacramento County has jurisdiction under the provisions of section 3773 of the Political Code, and that that section is constitutional for the reason that the state is not bound by the general words of the constitution or statute unless expressly declared so to be, and hence is not bound in actions instituted by it to begin a suit in the superior court of the county where the land is located.   He relies upon the rule declared and applied in *Mayrhofer* v. *Board of Education*, 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646] ; *Bank of Lemoore* v. *Fulgham*, 151 Cal. 234, 240, 241, [90 Pac. 936] ; *City Street Imp. Co.* v. *Regents*, 153 Cal. 776, 778, 780, [18 L. R. A. (N. S.) 451, 96 Pac. 801] ; *Clark* v. *Los Angeles*, 160 Cal. 30, 39, 41, [116 Pac. 722] ; *Miller* v. *Pillsbury*, 164 Cal. 199, 201, 202, 204, 205, [Ann. Cas. 1914B, 886, 128 Pac. 327] ; *Witter* v. *Mission School Dist.*, 121 Cal. 350, 351, [66 Am. St. Rep. 33, 53 Pac. 905].   We have had occasion recently to consider the rule with reference to the applicability of laws of general nature to the state and its subdivisions, and a reference to those cases will be sufficient to show the general rule on the subject.   (See *Balthasar* v. *Pacific Elec. Ry. Co., ante*, p. 302, [202 Pac. 37].)

These cases, however, have no applicability to · the facts in this case.   The people of the state in forming its government divided its sovereign powers into separate departments —the judicial, the legislative, and the executive (art. III, sec. 1, Const.).   The people vested directly in the superior court of a county the exclusive jurisdiction to determine controversies over the possession of land and to quiet title thereto (Const., art. VI, sec. 5).   If the people by the constitution had simply directed the legislature, with reference to the establishment of jurisdiction of the several superior courts of the state, to give such exclusive jurisdiction, it might be contended with some force that the general direction to the legislature to vest jurisdiction over cases of certain types to certain superior courts did not apply to actions begun by the state itself.   The situation, however, is altogether different.   [4]   Where the constitution itself has expressly defined and fixed the exclusive jurisdiction of its courts with reference to actions concerning the possession of real estate, the legislature cannot under its general power to legislate infringe upon the jurisdictional limits established

by the constitution itself, by giving jurisdiction to the superior
courts of Sacramento County which the constitution confers
upon the superior court of Calaveras County exclusively.
In interpreting the constitutional provisions concerning the
organization and jurisdiction of courts we are dealing with
the sovereign powers of the state and vesting such sovereign
powers in certain departments, hence there is no room for
the application of the rule that the state is not affected in
the exercise of its sovereign powers by the general language
of statute or constitution applicable to private citizens and
alone apparently applicable to the state because of the com-
prehensive character of the terms used.   Here the constitu-
tion is expressly dealing with such sovereign powers.   We
are dealing as much with the sovereign power of the state in
determining the limitation of the jurisdiction of the courts
as we are in determining where the legislative power of
the state is to be vested.   The superior court of a county
in exercising its jurisdiction is exercising the sovereign
power of the state.   Where the limitations of that power
are fixed by the constitution, the mere fact that the state
legislature has all the sovereign powers of legislation, except
where restricted by the constitution, does not authorize the
legislature by statute to vest jurisdiction in opposition to
the express terms of the constitution itself.

It may be conceded, as contended by the attorney-general,
that where the government in the exercise of its sovereign
power is attempting to use the process of court for the col-
lection of taxes essential to its existence, such actions stand
on an altogether different basis from the ordinary actions
between citizens.   It is recognized in *People* v. *Central Pac.
R. R. Co.,* 105 Cal. 576, 588, [38 Pac. 905]; that special
provisions as to procedure may be made by the legislature
in such cases.   This concession, however, does not meet the
situation with which we are confronted.   The people by
their constitution have expressly limited the powers of the
superior courts of the state so that no superior court has
any right to try actions for the possession of real estate or
the quieting title thereto, except such actions as involve real
estate within the boundaries of the county, except upon
transfer from the superior court of such county.   If the
legislature in the exercise of its taxing power desires to
avail itself of the courts for the purpose of the collection

of taxes, it must act in accordance with the constitutional limitations placed upon the courts. [5] We conclude from the foregoing that the statute in so far as it attempts to give jurisdiction to the superior court of Sacramento of actions for the possession of real estate located in other counties is unconstitutional and void.

[6] The attorney-general also contends that as the complaint not only prayed for the possession of the land, but also for the rents, issues, and profits thereof theretofore accrued and for a receiver, that the action is thus one for both personal relief as well as for possession of land, and hence the constitutional provision does not give exclusive jurisdiction over such an action to the superior court of the county in which the court is located. Upon this proposition the attorney-general relies upon *Le Breton* v. *Superior Court,* 66 Cal. 27, 30, [4 Pac. 777]; *Wood* v. *Thompson,* 5 Cal. App. 247, 248, [90 Pac. 38]; and also upon cases interpreting section 392 of the Code of Civil Procedure, as to the jurisdiction of superior courts, such as *Smith* v. *Smith,* 88 Cal. 572, [26 Pac. 356]; *Nason* v. *Feldhusen,* 34 Cal. App. 789, 795, [168 Pac. 1162]; *Weyer* v. *Weyer,* 40 Cal. App. 765, [182 Pac. 776]; *Warner* v. *Warner,* 100 Cal. 11, [34 Pac. 523]; *Clark* v. *Brown,* 83 Cal. 181, [23 Pac. 289]; *Peninsular Trading etc. Co.* v. *Pacific Steam W. Co.,* 123 Cal., 689, 696, [56 Pac. 604]. On this point it is sufficient to say that the action in so far as it relates to rents, issues, and profits is essentially one to quiet title within the meaning of the constitution, because the right thereto depends upon the issue of title and an adjudication of the right to rents is necessarily determinative of the right to the land itself. This principle was laid down in *Fritts* v. *Camp,* 94 Cal. 393, [29 Pac. 867]. In that case the plaintiff owning land in Siskiyou County brought suit in Del Norte County to enjoin the defendant from depositing mining debris in Indian Creek to the injury of plaintiff's land in Siskiyou County. The complaint alleged that the defendant claimed adversely an easement so to do. The plaintiff disputed the claim and the court found that there was no easement. The court held that by reason of these issues the exclusive jurisdiction of the case was in Siskiyou County. In the case at bar plaintiff's claim to the rents, issues, and profits of the land is based upon a claim of title thereto, and the defendant re-

sists on the ground that it has title. The court on this issue finds that the defendant has title and that the plaintiff has no title, and bases its judgment upon this finding. The case of *O'Meara* v. *Hables*, 163 Cal. 240, [134 Pac. 1003], is not opposed to this view; that was a suit by a landlord for rents reserved in a lease and it was held that neither the possession of or right of possession to the land was a material issue in the case.

[7] The action for rents and profits of land where the right to the title is involved is not a transitory action. The distinction between local and transitory actions is thus stated in 40 Cyc. 59, 63: "The action must be brought where the land lies if these two things concur: (1) If the subject of inquiry is a right or interest in the land; and (2) if the judgment in the case will operate directly upon this right or interest." (40 Cyc. 59.)

"When the determination of an estate or interest in land is not an incident in the determination of a cause for equitable relief in trust, fraud, or contract, but is itself the immediate question before the court, and may come within the immediate effect of its decree operating *ex proprio vigore,* then the venue is local. The real question in all these cases is as to the true nature of the action: Does it turn on the personal obligation or on the title? Does it take immediate effect *in personam* or upon the interest in the land? And the test here is found, not in any formal characteristic, but in the substantial nature of the action as shown in the pleading, and the kind of judgment which may be rendered." (40 Cyc. 63.)

It is clear that the demand for rents, issues, and profits of the land in this case does not destroy the local character of the action for possession of the land, and that this case does not come within the purview of cases holding that where a transitory cause of action is properly joined with a local one, the local court does not have exclusive jurisdiction.

It must be concluded that section 3773 of the Political Code, in so far as it authorizes an action to be brought in Sacramento County for either the possession of lands or for the rents, issues, and profits thereof because of a tax deed to the state, where such lands are in other counties, is void, as a violation of the jurisdiction vested by the constitu-

tion in the superior courts of the respective counties in which the land is located.

It is contended that this action is essentially one "involving the legality of a tax" (art. VI, sec. 5), and hence triable in any county, but if it be conceded to be such an action, it is also one for the possession of real estate and comes within the proviso in article VI, section 5, vesting exclusive jurisdiction in the superior court of the county in which the land is located.

The judgment is reversed and the trial court directed to dismiss the case without prejudice to the rights of the state to renew the action in Calaveras County.

Sloane, J., Shaw, J., and Lennon, J., concurred.